FILED

1   Teodor Marian
2   P. O. Box 1461
3   Ventura, CA 93002                                    2017 APR 28  PM 4: 19
4   Plaintiff in Pro Per        
5   No Telephone                                    

6
7               UNITED STATES DISTRICT COURT
8               CENTRAL DISTRICT OF CALIFORNIA

9   Teodor Marian,                    )   Case No.: CV 16-8276-DMG (RAOx)
10            Plaintiff,             )SECOND AMENDED COMPLAINT, DOC.#25
11        v.                        )PRO SE COMPLAINT FOR DAMAGS AND
12  **Alex Chang,** in his Individual Capacity,   )INJURIES AGAINST ALEX CHANG AND
    ('Self-Declaring' Owner and Manager of   )PETER CHANG FOR 'SELF-DECLARING'
13  Dickens Chang Properties Under HUD   )OWNER AND MANAGER OF DICKENS
14  Sec.8 Voucher Written Contract, Ventura);   )CHANG PROPRTY UNDER HUD SEC.8
15  **Peter Chang,** in his Individual Capacity,   )VOUCHER CONTRACT OF VENTURA
16  ('Self-Declaring' Owner and Manager of   )FOR ACTING RECKLESSLY,WANTONLY
17  Dickens Chang Properties Under HUD   )UNREASONABLY AND IMPROPERLY
18  Sec.8 Voucher Written Contract, Ventura);   )DEMANDING MOMEY OVER DUE PAID TO
19  **Terri Hernandez,** in her Individual Capac.   )INITIATE EVICTION;TERRI HERNANDEZ
20  (Housing Specialist, Sec.8 Voucher,Ventura)   **FOR INCITING RETALIATORY EVICTION.**
21            _____Defendants.)      **JURY TRIAL DEMANDED**

22
23               **TO THE HONORABLE COURT**
24               **JURISDICTION**
25  **1.** Plaintiff alleges that according to 'Jackson Square Assoc. v. US Dept. of HUD (1992) 797F
26  Supp. 242, 245' that being similarly as in instant case the *'Court has subject matter jurisdiction*
27  *under 28 USC Sec. 1331'.*
28

                                    1

**2.** Plaintiff alleges that under '28 USC Sec 1331' *the district courts shall have original jurisdiction of all civil actions arising under the Constitution, law, or treaties of United States'.*

**3.** Plaintiff alleges that *"instant action arises under 42 USC Sec. 1437f, et seq., pursuant to which the HAP contract was formed, and federal common law",* as upheld in 'Jackson Square Assoc v. US Dept. of HUD(1992) 797 F Supp 241, 245'. Also according to '' Western Sec. Co. v. Derwinski (1991) 937 F2d 1276, 1280', the *"Suits to 'enforce contracts with federal agencies' are governed by federal common law ... and such as a result arise under federal law for purposes of section 1331".*

**4.** Plaintiff alleges that *"instant case is based on 3/4/09 written contact, a' three-way-binding-contract', between owner Dickens Chang of property at 968 E. Main St. Ventura, CA 93001, plaintiff/tenant and  with Sec.8 Voucher of Ventura Housing Authority (HA), HUD"- 'a federal agency that is subject to 28 USC Sec 1331 as well as under jurisdiction of this Court' .*

**5.** Plaintiff alleges that in instant case the *"Court has jurisdiction under 42 USCA Sec.1404a in respect to 'sue-and-be-sued' waiver of sovereign immunity as contemplated  under Housing Act of 1948 that allow Secretary of HUD to 'sue-and-be-sued' with regard to functions under the US Housing Act of 1937 thus providing a waiver of sovereign immunity".*

**6.** Plaintiff alleges that this Court is a proper Court and has a competent jurisdiction over all parties individually sued and the subject matters of this litigation conferred under 42 USCA Sec. 1331 and 42 USCA Sec. 1404a .

### PRO SE GENERAL AND FACTUAL ALLEGATIONS

**8.** For convenience of the Court and interested parties plaintiff attaches hereto 21 pages of record as ''E1-21'.

**9.** Plaintiff Teodor Marian ('Plaintiff') is a 'pro se layman handicapped by foreign language barrier. At home plaintiff has not the means necessary to prepare Court's papers as required, he prepares the papers at Ventura law library using free computers when are available and using library's law books.

**10.** Plaintiff alleges that since 3/4/09 is duly qualified for federal housing subsidy under HUD, Sec.8 Voucher Program of Ventura, Housing Authority (HA).

**11.** Plaintiff alleges that on 3/4/09 entered a 'three-way-binding-written-contract' between plaintiff/tenant, owner Dickens Chang ('Dickens') of the 968 E. Main St. Ventura, CA 93001, and HUD-Sec.8 Voucher Program of Ventura, Housing Authority (HA), *see E 1-3*.

**12.** Plaintiff alleges that legitimated parties under 3/4/09 contract are plaintiff/tenant living at 968 unit, owner Dickens living at 978 unit and the Sec.8 Voucher Program, Housing Authority (HA).

**13.** Plaintiff alleges that the property at 968 E. Main St. Ventura, CA 93001 is managed by owner Dickens, *see E3*.

**14.** Plaintiff alleges that HA-via Terri Hernandez ('Terri') conducts annually rent determination in respect to  HAP payment to owner, tenant's rent to owner and total rent to owner, *see E4*.

**15.** Plaintiff alleges that on 2/2/16 tenant's rent set by HA was $229.00/Mo. The 2016 tenant's rent determination due to 'utility allowance clarification was greatly underestimated being improperly downward only by $21.00 from $250.00, *see E4*.

**16.** Plaintiff alleges that "Payment to the landlord may 'never be more than the amount indicated on the lease and Hap contract' or 'the most recent review conducted by the Housing Authority' " "Extra payments (not approved in writing by Housing Authority) constitute fraud", *see E5*.

**17.** Plaintiff alleges that monthly rent on property of Dickens at tenant's 968 unit is collected by

Peter Chang ('Peter') who living at 972 unit. Peter collects monthly due rent on all properties of Dickens.

**18.** Plaintiff alleges that Peter is not a legitimate party to or to appear on 3/4/09 contract. Rather, Peter is a tenant living at 972 unit on property of Dickens properties, *see E2,3,3a.*

**19.** Plaintiff alleges that on 4/23/09 HA sent notice to *owner Dickens* that tenant's rent is set as $232.00/Mo, *see E6.*

**20.** Plaintiff alleges that Peter in May and June 2009 demanded  extra money over tenant's due already paid, the rent set by HA-$232.00, *see E6.*

**21.** Plaintiff alleges that <u>after</u> tenant paid  $12.00 in excess over $232.00 in May 2009 as demanded by Peter and $68.00 in excess over $232.00 paid in June 2009 as demanded by Peter, <u>on 6/12/09</u> tenant addressed to Peter in writing and verbal the matter of money in excess demanded by and paid by tenant as follows *"Dear Peter Please Tell How Much You Receive From Sec.8 Each Month".* But Peter turned his back and left telling something in his native Chinese language and no money was returned, *see E6.*

**22.** Plaintiff alleges that after 6/12/09 notified HA regarding Peter's extra money demanded and paid by tenant in May and June 2009 but HA declined to consider/address the matter.

**23.** Plaintiff alleges that the rent payments of $229.00 for November and December 2016 was duly and timely paid and the same for January 2017 tenant paid the $229.00 duly and timely due rent payments, *see E7-9.*

**24.** Plaintiff alleges that at the time of rent-payments for Nov.&Dec. 2016 and Jan. 2017 Peter had no objection that he has not received his full rent of $800.00/Mo (from Tennant $229.00 and from HA the subsidy of $571.00-*see E 4*), *see also E7-9.*

**25.** Plaintiff alleges that on 1/13/17 Peter after violently hitting tenant's door handled to tenant a

written notice demanding $1,863 extra money in excess of tenant's rent payment paid for Nov.&Dec. 2016 and Jan. 2017, *see E 10*. The demand was signed by an 'unknown manager'.

**26.** Plaintiff alleges that Peter has a custom to demand money in excess from tenant's monthly rent-payments he received timely, *see E 6,10*. Peter has repeatedly demanded money in excess of the rent set by HA as on 4/23/09 (see E6) and 1/13/17 (see E10).

**27.** Plaintiff alleges that on 1/18/17/We. answered Peter's 1/13/17/Fr. demand for money, requesting and asking who is the manager, the address of manager and who collects the money, *see E10*.

**28.** Plaintiff alleges that on 1/19/17 Peter under the same 1/13/17 notice demanding money answered tenant's 1/18/17 request that the "Manager is '*Alex Chang*' ('Alex') living at 978 E. Main St. Ventura, CA 93001", *see E11*.

**29.** Plaintiff alleges that Peter and Alex are not legitimate parties under 3/4/09 written contract with HA-HUD and legally may not have any demand of money under that contract, *see E1-3a*.

 **30.** Plaintiff alleges that Alex is living in Los Angeles running a business there and is not living at 978 E. Main St., *see E 12, 12a*.

**31.** Plaintiff alleges that Alex and Peter have *'self-declared'* as owner and manager of the property of Dickens at 968 E. Main St. Ventura, CA 93001 under the 3/4/09 written contract with Sec.8 of Ventura HA-HUD in order to demand and obtain money in excess of tenant's dues paid otherwise to evict tenant.

**32.** Plaintiff alleges that Peter's 1/13/17 notice is signed as by manager <u>but</u> no manager name, and 1/19/17/Th. notice demanding the same amount of money are the same papers under the same signature <u>but</u> by Alex. As appears the 1/13/17/Fr. and 1/19/17/Th. papers are a manipulation and fabrication of Peter coercing tenant to pay demanded money, *see E 10,11*.

**33.** Plaintiff alleges that in absence of money from tenant demanded 'Peter and Alex in

retaliation  on 2/6/17 initiated and issued eviction' of tenant signed by Alex as agent of the

owner but the signature is the same as under 1/13/17 (see E10) and 1/19/17(see E11) papers, *see*

*E 13.*

**34.** Plaintiff alleges that Alex and/or <u>Peter</u> in support of eviction procured a paper from Terri

dated 10/18/16 addressed to landlord that "all payments issued on behalf of the above referenced

tenant '<u>will cease effective October 31, 2016</u>' (this matter is forged by Terri and highly

questionable) ", *see E 14.*

**35.** Plaintiff alleges that Terri providing 10/18/16 paper to Alex-Peter which specially to be

attached to 2/6/17 eviction paper Terri was committing an 'act of inciting a retaliatory eviction,

*see E 13, 14.*

**36.** Plaintiff alleges that Peter has signed all papers demanding money dated 1/13/17 (E10),

1/19/17 (E11), and 2/6/17 eviction paper (E13), there that signature is by Peter not by Alex.

**37.** Plaintiff alleges that the demand of money initiating eviction as described herein is a 'viable

cause of action' under actual Second Amended Complaint (SAC) to be filed 4/28/17.

**38.** Plaintiff alleges that all facts described herein are committed and arise under 3/4/09 written

contract  with Sec.8 Voucher Program of Ventura, HA-HUD which  are arising under 42 USC

Sec. 1437f pursuant to which the HAP contract was formed, and federal common law with

respect to (HUD's) functions thereunder, thus being subject to 28 USC Sec.1331. That similarly

is upheld and set forth under 'Jackson Square Assoc. v. US Dept. of HUD (1992) 797 F Supp.

242, 245', *see E 15, 16.*

**39.** Plaintiff alleges that instant action being based on 3/4/09 written contract with HUD  that is a

federal agency there the 'suits to enforce contracts with federal agencies are governed by federal

common law' that similarly is held under ' Western Securities Co. v. Dervinski (1991) 937 F2d

1276, 1277, 1280', *see E 17-19.*

**40.** Plaintiff alleges that claims by Sec.8 of Ventura Chief Executive Officer Denise Wise on

2/14/17 that Sec.8 of Ventura agency is created under California including judicial review

appears to be unsuitable when considering that Sec.8 is formed under HUD which is governed by

federal law. Here appears a conflict between state and federal law where agency regulations

implementing federal statutes have been held to *'pre-empt'* state law under the 'Supremacy

Clause ', that is upheld by US SCt in 'Chrysler Corp. v. Brown (1979) 99 SCt 1705,1714, see

cases cited under 1714 *fn19.* The 'Supremacy Clause' of the US Cost. Art.VI, Cl. 2 is reading as

follows**:** *"This Constitution, and the laws of the United States which shall be made in pursuance*

*thereof; and the treaties made, or which shall be made, under the authority of the United States,*

*shall be the supreme law of the land; 'and the judges in every state shall be bound thereby,*

*anything in the Constitution of any State or laws to the contrary notwithstanding' ",* *see E 20,21***.**

## MONETARY DAMAGE CLAIM

**41.** Plaintiff alleges that 'monetary damage claim' is sought individually against each defendant

as they are sued in 'individual capacity'.

**42.** Plaintiff alleges that each and all defendants acted systematically on different grounds and in

different ways demanding money in excess of tenant's dues timely paid otherwise to evict tenant.

**43.** Plaintiff alleges that each and all defendants acted willfully, recklessly and wantonly

harassing tenant in order to inflict emotional distress, to harm and annoy tenant.

**44.** Plaintiff brings monetary damage claim individually sought as follows:

-*$55,000.00 against Alex Chang* for causing prejudice and harm while 'self-declaring' as owner

and  manager of Dickens Chang property at 968 E. Main St. Ventura, CA 93001 under 3/4/09

7

written contract with Sec.8 Voucher Program of Ventura, HA-HUD, $25,000.00 as compensatory damages, and $10,000.00 exemplary damages;

-*$55,000.00 against Peter Chang* for use of threats in demanding money otherwise evict tenant under false statements,$20,000.00 as compensatory damages, $10,000.00 as exemplary damages;

-*$65,000.00 against Terri Hernandez* for inciting a retaliatory eviction of tenant, $30,000.00 as compensatory damages, $15,000.00 as exemplary damages.

### VERIFICATION

**45.** Based on foregoing pro se plaintiff/tenant declares that all matters set forth herein are in own knowledge of plaintiff, and plaintiff can testify positively therefor. Plaintiff declares that foregoing is true and correct.

Dated; April 28, 2017.

Teodor Marian, Plaintiff in Pro Per.

### PRAYER

**46.** Plaintiff prays judgment against each defendant as they are sued in individual capacity as set forth herein.

**47.** Plaintiff prays judgment against each defendant in individual capacity as they are sued for all damages set forth in monetary damage claim.

**49.** Plaintiff prays further relief against each defendant as in individual capacity as the the Court deems proper.

Dated: April 28, 2017.

Teodor Marian, Plaintiff in Pro Per.

8

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Dated: April 28, 2017

Sign: _____

Print Name: ___ TEODOR MARIAN

9

# Request for Tenancy Approval
## Housing Choice Voucher Program

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

OMB Approval No. 2577-0169
(exp. 07/31/2007)

Public reporting burden for this collection of information is estimated to average .08 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.   This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number.

Eligible families submit this information to the Public Housing Authority (PHA) when applying for housing assistance under Section 8 of the U.S. Housing Act of 1937 (42 U.S.C. 1437f).  The PHA uses the information  to determine if the family is eligible, if the unit is eligible, and if the lease complies with program and statutory requirements.   Responses are required to obtain a benefit from the Federal Government.   The information requested does not lend itself to confidentiality.

| 1. Name of Public Housing Agency (PHA) | 2. Address of Unit (street address, apartment number, city, State & zip code) |
|---|---|
| Housing Authority of the City of San Buenaventura | 968 E. Main St. Ventura, CA 93001 |

| 3. Requested Beginning Date of Lease | 4. Number of Bedrooms | 5. Year Constructed | 6. Proposed Rent | 7. Security Deposit Amt. | 8. Date Unit Available for Inspection |
|---|---|---|---|---|---|
| 4/1/09 | 1 | 1950? | $800/mo | $800.- | any time |

**9. Type of House/Apartment**
- [X] Single Family Detached
- [ ] Semi-Detached / Row House
- [ ] Manufactured Home
- [ ] Garden / Walkup
- [ ] Elevator / High-Rise

**10. If this unit is subsidized, indicate type of subsidy:**
- [X] Section 202
- [ ] Section 221(d)(3)(BMIR)
- [ ] Section 236 (insured or noninsured)
- [ ] Section 515 Rural Development
- [ ] Home
- [ ] Tax Credit
- [ ] Other (Describe Other Subsidy, including Any State or Local Subsidy) _____

**11. Utilities and Appliances –**
The owner shall provide or pay for the utilities and appliances indicated below by an "O". The tenant shall provide or pay for the utilities and appliances indicated below by a "T".  Unless otherwise specified below, the owner shall pay for all utilities and appliances provided by the owner.

| Item | Specify fuel type | | | | | Provided by | Paid by |
|---|---|---|---|---|---|---|---|
| Heating | [X] Natural gas | [ ] Bottle gas | [ ] Oil | [ ] Electric | [ ] Coal or Other | O | Owner |
| Cooking | [ ] Natural gas | [ ] Bottle gas | [ ] Oil | [X] Electric | [ ] Coal or Other |  | T |
| Water Heating | [X] Natural gas | [ ] Bottle gas | [ ] Oil | [ ] Electric | [ ] Coal or Other | O | Owner |
| Other Electric | | | | | | | T |
| Water | | | | | | O | Owner |
| Sewer | | | | | | O | Owner |
| Trash Collection | | | | | | | Owner |
| Air Conditioning | | | | | | | T |
| Refrigerator | | | | | | O | Owner |
| Range/Microwave | | | | | | | |
| Other (specify) | | | | | | | |

Exhibit
E1-21

12.    Owner's Certifications.
a.    The program regulation requires the PHA to certify that the rent charged to the housing choice voucher tenant is not more than the rent charged for other unassisted comparable units.  Owners of projects with more than 4 units must complete the following section for most recently leased comparable unassisted units within the premises.

| Address and unit number | Date Rented | Rental Amount |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

b.    The owner (including a principal or other interested party) is  not the parent, child, grandparent, grandchild, sister or brother of any member of the family, unless the PHA has determined (and has notified the owner and the family of such determination) that approving leasing of the unit, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

c.  Check one of the following:

____ Lead-based paint disclosure requirements do not apply because this property was built on or after January 1, 1978.

____ The unit, common areas servicing the unit, and exterior painted surfaces associated with such unit or common areas have been found to be lead-based paint free by a lead-based paint inspector certified under the Federal certification program or under a federally accredited State certification program.

_X_ A completed statement is attached containing disclosure of known information on lead-based paint and/or lead-based paint hazards in the unit, common areas or exterior painted surfaces, including a statement  that the owner has provided the lead hazard information pamphlet to the family.

13.   The PHA has not screened the family's behavior or suitability for tenancy.  Such screening is the owner's own responsibility.

14.    The  owner's lease must include word-for-word all provisions of the HUD tenancy addendum.

15.    The PHA will arrange for inspection of the unit and will notify the owner and family as to whether or not the unit will be approved.

| Print or Type Name of Owner/Owner Representative | Print or Type Name of Household Head |
|---|---|
| Dickens Chang MING SHU CHANG W. | Todor Marian |
| Signature | Signature (Household Head) |
| | |
| Business Address | Present Address of Family (street address, apartment no., city, State, & zip code) |
| 978 E Main St. Ventura, 93001 | |
| Telephone Number | Date (mm/dd/yyyy) | Telephone Number | Date (mm/dd/yyyy) |
| (805) 643-8888 | 3-18-09 | 661-317-5937 | 3/4/09 |

2

# Housing Authority of the City of San Buenaventura
## 11122 Snapdragon St., Ste. 100
## Ventura, CA 93004
## (805) 647-5990 (805) 647-4691

Ext. 7292227

# Request for Tenancy Approval/Basic Information

**Instructions:  Complete & sign areas on all required pages.  Attach copies of Rental Application and Lease Agreement.**

Tenant Name _Teodar Marian_ Phone # ~~661-317-8937~~

Rental Address ~~968 E. Main St~~ 968 E. main St City/Zip _Ventura 93001_

Bedroom Size ~~Studio~~ Studio Proposed Monthly Rent ~~$800~~ $800   Security Deposit $ 800

CHANG MING-SHA W.   (805)

Owner Name _Dickens CHANG,_   Phone # 643-8888

Owner Address ____978 E. Main St____ City/Zip _93001_ Ventura

Property managed by ____CHANG MING-SHA W.____

Checks made payable to ____Dickens CHang____

Checks mailed to____978 E. main St.____ City/Zip _93001_ Ventura

Is Owner related to Tenant?  No X  Yes___  If yes, how? _____

Upon approval of this request, a move-in inspection must be complete.  Please indicate a name and phone number for the party we can arrange this with:

_____

We, the undersigned parties, have agreed to a lease or month to month rental agreement in compliance with conditions set forth in the Section 8 regulations. The final contract rent must meet reasonable rent standards, as determined by the Housing Authority of the City of San Buenaventura.

Owner/Agent _____   X _____ Tenant

3





# HOUSING AUTHORITY
## of the
## CITY OF SAN BUENAVENTURA

Denise Wise, Chief Executive Officer

BOARD OF COMMISSIONERS

John Polanskey, Chair
Jim White, Vice Chair
William Cornell, Commissioner
Francisco Sanchezi Commissioner
Selfa Saucedo, Commissioner
Bill Watkins, Commissioner
Jenny York, Commissioner

## Section 8 Housing Voucher Program - Notice of change to Lease and Contract

2/2/2016
Tenant Code: p0h5h36b

TEODOR MARIAN
968 E MAIN ST
VENTURA, CA 93001

The reason for this change is due to: + Utility allowance clarification

[X] **REEXAMINATION**
    Annual Review of family income and/or composition.

[ ] **INTERIM ADJUSTMENT**
    Interim change in family income and/or composition.

[ ] **RENT ADJUSTMENT**
    The owner/agent request for a rent adjustment.

[ ] **CHANGE IN FAMILY COMPOSITION**

| Adjustment in Payment | From | | To | |
|---|---|---|---|---|
| HAP Payment | $ | 550 | $ | 571 |
| Tenant Rent | $ | 250 | $ | 229 |
| Total Rent to Owner | $ | 800 | $ | 800 |
| URP | $ | 0 | $ | 0 |

## Effective Date

This change to the Housing Voucher Contract and/or Lease Agreement will be effective from 04/01/2016. The next reexamination is due on 04/01/2017.

This change is presented to you in accordance with the terms and conditions of the Housing Voucher Contract and/or Lease Agreement and shall be attached to and made a part of your Housing Voucher Contract and/or Lease Agreement. All other covenants, terms and conditions of the original Housing Voucher Contract and/or Lease Agreement remain the same.

To the Tenant Only
If you disagree with this decision, you may request an informal hearing. If a hearing is desired, you must submit a written request to this office within 14 days of this notice or your right to a hearing will be waived.

**Terri Hernandez**
Housing Specialist

# Important Notice

Payment to the landlord may never be more than the amount indicated on the lease and Hap contract or the most recent review conducted by the Housing Authority.

Extra payments (not approved in writing by the Housing Authority) constitute fraud. This is a federal offense and grounds for immediate termination of assistance and referral to the Inspector General for legal prosecution of both tenant and landlord/owner.

I have read and understand the above.

_Teodar Marian_
Tenant (Print Name)

_[signature]_
Tenant Signature

_[signature]_ 14/04
Date

CHANG, MING-SHU W.
Owner (Print Name)

_[signature]_
Owner Signature

3-18-04
Date

5



# Housing Authority
## of the
## City of San Buenaventura
### Edward L. Moses, Chief Executive Officer

BOARD OF COMMISSIONERS

Ira J. Dale, Chair
John Polanskey, Vice Chair
Jill Bengeel Fioravanti
Sal Juana Gonzalez
Joseph Krezto
Phyllis D. Moore
Bill Watkins

### SECTION 8 HOUSING VOUCHER PROGRAM
### NOTICE OF CHANGE TO LEASE AND CONTRACT

Date: 4 23 2009



TEODAR MARIAN                    Owner: DICKENS CHANG
968 E MAIN ST
VENTURA, CA 93001

### The reason for this change is due to:

- [ ] **INITIAL**
  Initial Housing Assistance Payment contract.
- [ ] **REEXAMINATION**
  Annual Review of family income and/or composition.
- [X] **INTERIM ADJUSTMENT**
  Interim change in family income and/or composition.
- [ ] **RENT ADJUSTMENT**
  The owner/agent request for a rent adjustment.
- [ ] **CHANGE IN FAMILY COMPOSITION**
  Name _____  Adult _____  Minor _____

| Adjustment in Payment | **TO** | | | **FROM** |
|---|---|---|---|---|
| HAP Payment | $ 568 | | HAP Payment | $ 551 |
| Tenant Rent | $ 232 | | Tenant Rent | $ 249 |
| Total Rent to Owner | $ 800 | | Total Rent to Owner | $ 800 |

### Effective Date
This change to the Housing Voucher Contract and Lease Agreement will be effective 05/01/2009. The next reexamination is due on 04/01/2010.

This change is presented to you in accordance with the terms and conditions of the Housing Voucher Contract and/or Lease Agreement and shall be attached to and made a part of your Housing Voucher Contract and/or Lease Agreement. All other covenants, terms and conditions of the original Housing Voucher Contract and/or Lease Agreement remain the same.

To the Tenant Only
If you disagree with this decision, you may request an informal hearing. If a hearing is desired, you must submit a written request to this office within 10 days of this notice or your right to a hearing will be waived.

*Marian paid : $490.00 for May*
*$302.00 for June*

*DEAR PETTER PLEASE TELL HOW MUCH*
*6/12/09 YOU RECEIVE FROM Sec 8 EACH MONTH.*

11122 SNAPDRAGON STREET, SUITE 100 VENTURA, CALIFORNIA 93004 (805)647-5990 FAX (805) 647-4691

*6*







Rent for December 2016 to
Dickens Chung 97 E. Main St. Vtn Book

AGT 717129 LOC 000000 DT 120216 $229.00 2HUNDRED29DOLLARS AND,
NO CENTS      by Teodor Moner at 968 E. Main St. Vtn
                                                      93001

*  1 7 5 0 6 2 9 8 5 1 9  *

E 8



MONEY ORDER

17-470587141

A 717129 D 010317
T 1001 02
1747058714 18 L 000000                    $ 229.00

PAY EXACTLY TWO HUNDRED TWENTY-NINE DOLLARS AND NO CENTS

PAY TO THE ORDER OF *DICKENS CHANG 978 E Main St.* Ventura, CA 9001    PAYMENT FORWARDED TO

*Teodor Marian 968 E Main St. Vta 9001*    *Ponfolian*

*Rent for January 2017*

⑆ 102 100400 ⑈ 40 1747058714 18⑈

MONEY ORDER RECEIPT - NON NEGOTIABLE

*Rent for January 2017 to*
*Dickens Chang 978 E Main St. Vta CA 9001*

AGT 717129 LOC 000000 DT 010317 $229.00 2HUNDRED29DOLLARS AND NO CENTS *by Teodor Marian et 968 E Main St. Vta 93001*

*    1 7 4 7 0 5 8 7 1 4 1    *

LOAD THIS DIRECTION, THIS SIDE UP

LOAD THIS DIRECTION, THIS SIDE UP

9

JAN-13-2017 12:33  FROM:HOSPITAL  Y UNLIMITE 5620656511           TO:18056438888        P.1/1

# Chang's Apartment

## PAST DUE RENT NOTICE

To:   Mr. Marian

     968 E. Main St.

     Ventura, Ca. 93001

The Housing Authority of Ventura had stopped all of your subsidies due to the termination of your case as of November 1st 2016. Please make payment immediately. See below for rent owe and late fees as of today, in accordance with the terms and conditions of your rental agreement.

PAST DUE:  Nov. 2016 (rent)  $571 + $50 (late fee)

             Dec. 2016 (rent)  $571 + $50 (late fee)

             Jan. 2017 (rent)  $571 + $50 (late fee)

**TOTAL RENT PAST DUE: $1,713 + $150 (late fee) = $1,863**

It is the tenant's responsibility to abide by Housing Authority's program guidelines to receive benefits and to notify the landlord on change of eligibility or the termination of benefits.

Please submit the PAST DUE payment of **$1,863** immediately to 978 E. Main St. Ventura to avoid further penalty and negative impact to your credit history.

Sincerely,

Manager:

Date:  1/13/2017

* **Answer, 1/18/17:** This notice/bill demanding money was handled by 'Peter Chang' (at 972 E. Main St. Vta. CA 93001) to Marian (at 968 E. Main St.) on 1/13/17. The notice/bill is missing the name, address and phone number for 'Manager' and who collect the money. Please 'forthwith' provide this information. Thanks, Marian,   TM

# Chang's Apartment

## PAST DUE RENT NOTICE

To:   Mr. Marian

  968 E. Main St.

  Ventura, Ca. 93001


The Housing Authority of Ventura had stopped all of your subsidies due to the termination of your case as of November 1st 2016.  Please make payment immediately.  See below for rent owe and late fees as of today, in accordance with the terms and conditions of your rental agreement.

  PAST DUE:  Nov. 2016 (rent)  $571 + $50 (late fee)

  Dec. 2016 (rent)  $571 + $50 (late fee)

  Jan.  2017 (rent)  $571 + $50 (late fee)

  **TOTAL RENT PAST DUE: $1,713 + $150 (late fee) = $1,863**


It is the tenant's responsibility to abide by Housing Authority's program guidelines to receive benefits and to notify the landlord on change of eligibility or the termination of benefits.

Please submit the PAST DUE payment of **$1,863** immediately to 978 E. Main St. Ventura to avoid further penalty and negative impact to your credit history.

Sincerely,

Manager: _____

  Alex Chang

  978 E. Main St. Ventura Ca 93001

  626-905-8998

Date:  1/19/2017

*11*



**D&B Worldbase**

## Source Information

| | |
|---|---|
| D&B Completed Analysis: | 10/01/2016 |
| Coverage Begin Date: | 12/08/2016 |
| Information Current Through: | 12/08/2016 |
| Database Last Updated: | 12/08/2016 |
| Update Frequency: | QUARTERLY |
| Current Date: | 01/17/2017 |
| Source: | Copyright © 2017 by Dun & Bradstreet, Inc. |

## Financial Information

| | |
|---|---|
| Net Worth (US): | NOT AVAILABLE |
| Net Worth (Local): | NOT AVAILABLE |
| Profit (US): | NOT AVAILABLE |
| Profit (Local): | NOT AVAILABLE |
| Currency: | U.S. DOLLAR |

## Sales Information:

| | |
|---|---|
| Annual Sales (US): | $102,313-ESTIMATED |
| Annual Sales (Local): | $NOT AVAILABLE |

## Company Information

| | |
|---|---|
| DUNS: | 15-246-8109 |
| Name: | SEQUOIA INTERNATIONAL TRADING |
| Registered Address: | 1993 EADBURY AVE ROWLAND HEIGHTS, CA 91748-4050 USA |
| County: | LOS ANGELES |
| Continent: | NORTH AMERICA |
| Mailing Address: | |
| Telephone: | (0001) 626-905-8998 |
| Year Started: | 2004 |
| Operating Status: | ACTIVE |

## Employee Information

| | |
|---|---|
| Total Employees: | 2-ACTUAL* *PRINCIPALS INCLUDED IN TOTAL |
| Employees Here: | 2-ACTUAL |

## Company History/Operations/Relationships &

## Other Information

| | |
|---|---|
| This Company's Specifics: | |
| DUNS: | 15-246-8109 |
| County: | LOS ANGELES |
| Ownership Is: | PRIVATELY OWNED |
| Business Is A: | SINGLE LOCATION |

## Executive(s) Information

| | |
|---|---|
| CEO Name: | ALEX CHANG |
| CEO Title: | EXECUTIVE |

## Business Description:

| | |
|---|---|
| Line of Business: | NONDURABLE GDS NEC |
| Primary SIC: | 5199 WHOL NONDURABLE GOODS |

LOS ANGELES CA 900

03 FEB 2017 PM 13 1

To: Teodor Marian
968 E. Main St
Ventura, CA 93001

93001-5036658

Alex Chang
978 E. Main St
Ventura, CA 93001

i2a



# Housing Authority
## of the
## City of San Buenaventura
### Denise Wise Chief Executive Officer

BOARD OF COMMISSION[...]

John Polans[...]
James White,
Willian.
Barbara .
Selfa Sauc...Jo
Karol Shulkin
Wanda Sumner

February 14, 2017

Teodor Marian
P.O. Box 1461
Ventura, CA 93001

     RE: Your Letter Dated February 6, 2017

Dear Mr. Marian:

     Our office has received and reviewed your letter of February 6, 2017. You ask for a "Decision forthwith on rent and housing assistance." Your housing assistance was terminated as of October 31, 2016. In the attachments to your letter you include a copy of the termination notice, so I fail to see the confusion.

     Regarding judicial review, you'll note that the housing authority is not a federal entity as you so often allude. Rather, this agency was created by the Health and Safety Code of the State of California and thereby judicial review is governed by the California Code of Civil Procedure. As such, the period for judicial review is ninety days (90) and that period has since elapsed, thus the decision is final.

         Sincerely,

         Denise Wise
         Chief Executive Officer

E/12c

# 3-DAY NOTICE TO
# PAY RENT OR MOVE OUT

Plaintiff(s): __Dickens Chang_____, Owner(s)

VS.

Defendant(s): __Teodor Marian_____, Resident

_____, Resident

_____, Resident

}

**Notice To
Pay Rent Or
Quit**

To: __Teodor Marian of 968 E. Main St. Ventura, CA. 93001_____, Resident(s) AND ALL OTHERS IN POSSESSION. PLEASE TAKE NOTICE that you are justly indebted to the owner of the herein described premises; and notice is hereby given that pursuant to the lease and/or rental agreement under which you hold possession, there is now due, unpaid and delinquent rent in the total sum of __Twenty Seven Hundred Thirteen Dollars__

($__2,713.00__). The total amount owing represents rent due for the following period(s):

$ __621__ Due from __November, 1_____, 20 __16__ to __November, 30_____, 20 __16__

$ __621__ Due from __December, 1_____, 20 __16__ to __December, 31_____, 20 __16__

$ __621__ Due from __January, 1_____, 20 __17__ to __January, 31_____, 20 __17__

$ __850__ Due from __February, 1_____, 20 __17__ to __February, 28_____, 20 __17__

WITHIN THREE (3) DAYS   after service on you of this notice, you are hereby required to pay the amount of the above stated rent in full OR quit the subject premises, move out, and deliver up possession to the owner and/or his authorized agent.

Your payment should be payable to: __Peter Chang_____ and payments shall be delivered to Name: __Peter Chang_____ at the following address: __978/972 E. Main St._____.

Unit #:_____, __Ventura_____ California, and Telephone Number ( __626__ ) __905-8998_____ who is usually available on the following days: __Monday to Sunday_____ and the following hours: __6 pm to 9 pm_____.

PLEASE TAKE FURTHER NOTICE    that unless you pay the rent in full OR vacate the premises WITHI N THREE (3) DAYS    as required by this notice, that the undersigned does hereby elect to declare a forfeiture of the subject lease and/or rental agreement and will institute legal proceedings for the unlawful detainer against you to recover possession of the premises plus court costs, attorney fees and PENALTY DAMAGES OF $600.00    due as provided by California law.

Pursuant to Section 1785.26 of the California Civil Code, as required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation.

The premises herein referred to which are now held and/or occupied by you are located in the City of __Ventura_____, County of __Ventura_____, State of California, and commonly known by the street and number of __968 E. Main St._____ apartment or suite number _____.

Dated this    __6__    day of __February_____, 20 __17__.

Owner(s): __Dickens Chang_____    By: __Alex Chang_____    Agent

*13*

**AOA**®

AOA FORM NO. 103 • COPYRIGHT 2001 • APARTMENT OWNERS ASSOCIATION OF SOUTHERN CALIFORNIA
VAN NUYS - (818) 988-9200 • LOS ANGELES - (323) 937-8811 • ORANGE COUNTY - (714) 539-6000 • LONG BEACH/SOUTH BAY - (562) 597-2422 • SAN DIEGO - (619) 294-7900

# HOUSING AUTHORITY
## OF THE
# CITY OF SAN BUENVENTURA

11122 Snapdragon Street Suite 100, Ventura, CA 93004
(805) 647-5990    FAX (805) 647-4691

Oct. 18, 2016

Dickens Chang
978 E. Main St.
Ventura, CA 93001

Re: T. Marian-968 E. Main St. Ventura, CA 93001

Dear Landlord:

Sec. 8 Housing Assistance Payments are contingent upon tenant cooperation and participation with all program requirements.

All payment issued on behalf of the above referenced tenant **WILL CEASE EFFECTIVE OCTOBER 31, 2016.**

We appreciate your participation in our rental subsidy program. If you would like to list this or any other unit on our courtesy rental listing, please log onto www.gosection8.com for more information. You can reach me at (805) 647-5990 ext. 3228 if you have any questions.

Sincerely,

Terri Hernandez
Housing Specialist
Housing Authority of the City of San Buenaventura

/4

The parties shall write the court forthwith informing it of the status of these claims.

So ordered.



**JACKSON SQUARE ASSOCIATES, a New York Limited Partnership, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, BUFFALO OFFICE—REGION II, Defendant.**

No. 88–CV–859C.

United States District Court, W.D. New York.

Aug. 10, 1992.

Owner of low income housing development brought action against Department of Housing and Urban Development (HUD) to recover additional utility allowance. On motion to dismiss or transfer to the Claims Court, the District Court, Curtin, J., held that: (1) court had subject matter jurisdiction, and (2) there was a waiver of sovereign immunity.

Motion denied.

**1. Federal Courts ⊂⇒1139**

District court's first inquiry in determining whether Tucker Act gives Claims Court exclusive jurisdiction over action is not to determine the source of the funds sought by the plaintiff but to determine whether statutes outside the Tucker Act can provide court with an independent grant of subject matter jurisdiction and waiver of sovereign immunity. 28 U.S.C.A. § 1346(a)(2).

**2. Federal Courts ⊂⇒976**

District court had subject matter jurisdiction over action by owner of low income housing development against Department of Housing and Urban Development for increased utility allowances; jurisdiction existed under the Housing Act, pursuant to which housing assistance payments contract was formed, and federal common law. United States Housing Act of 1937, § 8, as amended, 42 U.S.C.A. § 1437f; 28 U.S.C.A. § 1331.

**3. United States ⊂⇒125(32)**

Provision of the Housing Act of 1948 allowing the Secretary of Housing and Urban Development (HUD) to sue and be sued with regard to functions under the United States Housing Act of 1937 provides a waiver of sovereign immunity permitting suit in federal court by owners of low income housing development against HUD for increased utility allowances. United States Housing Act of 1937, § 2 et seq., as amended, 42 U.S.C.A. § 1437 et seq.; Housing Act of 1948, § 502(b), 42 U.S.C.A. § 1404a.

John J. Phelan, Buffalo, N.Y., for plaintiff.

Dennis C. Vacco, U.S. Atty. (Susan W. Schoepperle, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, District Judge.

BACKGROUND

This case stems from a dispute over the amount of payments due under a Housing Assistance Payments ("HAP") contract between plaintiff, Jackson Square Associates ("Jackson Square"), and defendant, the United States Department of Housing and Urban Development ("HUD"). Several motions are pending. First, plaintiff has moved to strike several affirmative defenses offered by defendant. Item 12. Second, plaintiff has moved to amend its complaint. Item 17. Third, defendant has moved to dismiss the complaint or have the case transferred to the Claims Court, pursuant to 28 U.S.C. § 1631, for lack of subject

*15*

as an unconsented suit against the sovereign. Hence it is commonly said that suits against the government for more than $10,000 are in the exclusive jurisdiction of the Court of Claims.... *In fact, the jurisdiction of the Court of Claims is not exclusive; rather, there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act with its $10,000 limit."*

*Id.* (quoting *Ghent v. Lynn,* 392 F.Supp. at 881 (citations omitted)) (emphasis in *Sanders*). *See also Bowen v. Massachusetts,* 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 2740 n. 48, 101 L.Ed.2d 749 (1988) (Claims Court jurisdiction is exclusive "only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court."); *Western Sec. Co. v. Derwinski,* 937 F.2d 1276, 1279 (7th Cir.1991) (same). *Thus, a district* court's first inquiry is not to determine the source of the funds sought by plaintiff, *see supra,* but to determine whether statutes outside the Tucker Act can provide plaintiff with an independent grant of subject matter jurisdiction and a waiver of sovereign immunity. *Sanders,* 903 F.2d at 117. This court will now undertake that inquiry.

[2] Plaintiff seeks subject matter jurisdiction under 28 U.S.C. § 1331, which states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, law, or treaties of the United States." It claims that this action arises under 42 U.S.C. § 1437f, pursuant to which the HAP contract was formed, and federal common law. The court agrees. "Suits to enforce contracts with federal agencies are governed by federal common law ... and as a result arise under federal law for purposes of section 1331." *Derwinski,* 937 F.2d at 1280 (citations omitted). *See FHM Constructors,* 779 F.Supp. at 680–81 (finding subject matter jurisdiction under § 1437 and other statutes).[1] Accordingly, the court concludes that it has subject matter jurisdiction over this suit.

[3] That brings me to the question whether HUD has consented to suit in the district court. Plaintiff relies on 42 U.S.C. § 1404a, which states in part: "The Secretary of Housing and Urban Development *may sue and be sued* only with respect to its functions under the United States Housing Act of 1937, as amended [42 U.S.C.A. § 1437 *et seq.*]...." (emphasis added). There is little doubt that plaintiff's suit, which is based on its HAP contract with HUD, is a suit "with respect to [HUD's] functions under" 42 U.S.C. § 1437 *et seq.* Accordingly, the court holds that § 1404a provides a waiver of sovereign immunity permitting plaintiff's suit *against HUD* in this court. At least two courts have drawn an identical conclusion based on § 1404a. *FHM Constructors,* 779 F.Supp. at 681–82; *Lattimore,* 1992 WL 118383.

The above holdings do not, however, end the court's analysis. In fact, they merely bring the court to the juncture that distinguishes the Second Circuit's analysis in *Sanders* from that of most other circuits in the country. In *Sanders,* the court asked *first* whether jurisdiction existed. Having concluded that it did, it reversed the district court's contrary conclusion and remanded for a determination on the merits. *Sanders,* 903 F.2d at 120. The *Sanders'* court then added this critical instruction on remand:

If the court determines that HUD is liable for the arbitration award, it need not engage in a further analysis of the source of the funds that would be used to satisfy its judgment—i.e., from general Treasury funds or funds within the discretion and control of the Secretary. The court should simply direct the Secretary to satisfy the judgment out of funds that are within his control, assuming, of course, that such funds exist. It is only as to such funds that the Secretary's immunity has been waived. *See F.H.A. v. Burr,* 309 U.S. 242, 250–51 [60 S.Ct. 488, 492–93, 84 L.Ed. 724] (1940); *Silberblatt, supra,* 608 F.2d at 36.

1. *But see 1610 Corp. v. Kemp,* 753 F.Supp. 1026, 1030–32 (D.Mass.1991) (concluding that contract action does not arise under federal law for purposes of § 1331 jurisdiction).

**7. Federal Courts** ⟜232

District court had original jurisdiction over lender's suit against Veterans' Administration to enforce loan guarantee, inasmuch as claim arose under federal law and statute empowering Administrator to sue or be sued in any court of competent jurisdiction resulted in waiver of sovereign immunity. 38 U.S.C.A. § 1820(a)(1).

**8. Federal Courts** ⟜979

Jurisdiction of federal district courts over contract claims against United States is limited to claims that do not exceed $10,-000, the larger claims being with jurisdiction of Claims Court. 28 U.S.C.A. §§ 1346(a)(2), 1491(a)(1).

**9. United States** ⟜125(6)

Statute empowering Veterans' Administrator to sue or be sued in any court, state or federal, of competent jurisdiction is better read as waiver of sovereign immunity than as grant of jurisdiction. 38 U.S.C.A. § 1820(a)(1).

**10. Federal Courts** ⟜1139

Statutes which allocate federal jurisdiction over contract claims against government between district courts and Claims Court do not constitute exclusive or exhaustive grant of jurisdiction over such claims. 28 U.S.C.A. §§ 1346(a)(2), 1491(a)(1).

**11. Courts** ⟜489(1)

Although statutes allocating federal jurisdiction over contract claims against government between district courts and Claims Court made clear that district court was not court of competent jurisdiction for adjudication of lender's suit against Veterans' Administration to enforce loan guarantee, statutes did not thereby render state court in which lender filed its suit a court of incompetent jurisdiction. 28 U.S.C.A. §§ 1346(a)(2), 1491(a)(1).

**12. Removal of Cases** ⟜21

Propriety of removal, under statute authorizing removal of state court suits by federal officers, of lender's suit against Veterans' Administration to enforce loan guarantee would be unaffected by district court's lack of original jurisdiction because aim of statute is to guarantee federal defendant a federal forum whether or not plaintiff could have selected that forum in the first place. 28 U.S.C.A. § 1442(a)(1).

**13. Federal Courts** ⟜191

Suit arising under federal law is within original jurisdiction of federal district court. 28 U.S.C.A. § 1331.

**14. Federal Courts** ⟜232

Suits to enforce contracts with federal agencies are governed by federal common law, and as a result arise under federal law for original jurisdiction purposes. 28 U.S.C.A. § 1331.

**15. Federal Courts** ⟜374

Although in determining what particular doctrine to apply in suit arising under federal law, court will often select rule of state law, that determination is itself an interpretation of federal common law.

**16. Armed Services** ⟜108

Veterans' Administration loan guarantee program empowers federal courts to create in common-law fashion such interpretive, suppletive, and interstitial principles as may be necessary to sound administration of program. 38 U.S.C.A. § 1801 et seq.

**17. Federal Courts** ⟜191

Whether federal courts, when creating interpretive, suppletive or interstitial principles necessary to sound administration of Veterans' Administration loan guarantee program, create new principles of law or borrow existing principles of state law, resulting body of law is federal for jurisdiction purposes. 28 U.S.C.A. § 1331; 38 U.S.C.A. § 1801 et seq.

**18. Guaranty** ⟜49

Although regulation conditioned release of Veterans' Administration's guarantee on Administration's notifying mortgage holder, within 15 days of being informed that holder intended to foreclose on mortgage, of its desire that personal liability be preserved, Administration's missing deadline by six days did not preclude release of guarantee where parties were not harmed.

17

1962); *Lindy v. Lynn*, 395 F.Supp. 769, 771 (E.D.Pa.1974), aff'd without opinion, 515 F.2d 507 (3d Cir.1975). because the aim of that statute is to guarantee a federal defendant a federal forum whether or not the plaintiff could have selected that forum in the first place, removal by an unauthorized party—a federal agency, as distinct from a federal officer sued in his individual capacity—does not appear to be a mere defect in the procedure for removal. It is tempting to suppose that we might transfer the case to the Claims Court under 28 U.S.C. § 1631 (transfer between federal courts to cure want of jurisdiction), but this route may be foreclosed by the provision of section 1447(c) that a case which has been improperly removed "shall be remanded" to the court from which it was improperly removed, which in this case is the state court.

[13–15] We need not pursue these questions. Jurisdiction is saved by the fact that Western's suit, being a suit against the Veterans' Administration to enforce the loan guaranty, arises under federal law and is therefore within the original jurisdiction of the federal district court by virtue of 28 U.S.C. § 1331 (the general federal-question jurisdictional statute), making objection to removal waivable. Suits to enforce contracts with federal agencies are governed by federal common law. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 125, 92 L.Ed. 32 (1947); *Price v. Pierce*, 823 F.2d 1114, 1119–20 (7th Cir.1987); *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 55 n. 4 (2d Cir.1985); *Lawrence v. United States*, 378 F.2d 452, 461 (5th Cir. 1967); *McDonald v. United States*, 13 Cl.Ct. 255, 260 (1987); cf. *Miree v. DeKalb County*, 433 U.S. 25, 28–31, 97 S.Ct. 2490, 2493–95, 53 L.Ed.2d 557 (1977), and as a result arise under federal law for purposes of section 1331. *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988 (4th Cir.1990). It is true that in determining what particular doctrine to apply in a particular suit, the court will

often select a rule of state law. *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966); *Powers v. U.S. Postal Service*, 671 F.2d 1041, 1043–44 (7th Cir.1982). But that determination is itself an interpretation of federal common law: a determination that, for this particular case, the federal common law rule shall be state-law rule thus-and-so. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *Powers v. U.S. Postal Service, supra*, 671 F.2d at 1043.

[16, 17] The Veterans' Administration loan-guaranty program, 38 U.S.C. §§ 1801 *et seq.*, empowers the federal courts to create in common law fashion such interpretive, suppletive, and interstitial principles as may be necessary to the sound administration of the program, cf. *Powers v. U.S. Postal Service, supra*, 671 F.2d at 1043, and whether the courts do this by creating new principles of law or by borrowing existing principles of state law, the resulting body of law is federal for purposes of jurisdiction. It is this body of law that Western invoked in suing to enforce the guaranty. This would be true whether or not Western acknowledged it, but in fact its complaint states that the "plaintiff's cause of action herein arises under the Veterans' Administration's failure to pay a mortgage guaranty claim arising under its home loan guaranty program. 38 U.S.C. Section 1801 et seq." The "sue or be sued" clause, 38 U.S.C. § 1820(a)(1), operates as the necessary waiver of sovereign immunity, permitting the suit to go forward notwithstanding that it is a suit against a federal agency. These two elements—claim arising under federal law, and waiver of sovereign immunity—would have entitled Western to bring this suit in the district court in the first place. *C.H. Sanders Co. v. BHAP Housing Development Fund Co., supra*, 903 F.2d at 118–20; *Falls Riverway Realty, Inc. v. City of Niagara Falls, supra*, 754 F.2d at 55 n. 4; *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370, 377–78 (D.C.Cir.1976).

We do not think it should be objected that this interpretation of section 1331 disrupts the allocation of jurisdiction between

the district courts and the Claims Court. That allocation is the creation of the Tucker Act, which waives sovereign immunity for contract claims against the government that are not waived by other statutes. *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983). Here we have another statute.

So we have jurisdiction. But we invite Congress's attention to the hole that *Primate Protection League* has made in the consistent congressional policy of allowing the federal government to insist that suits against it be litigated in federal court because state courts might be tempted to treat the U.S. Treasury as the ultimate deep-pocket litigant. As a result of the interaction between 38 U.S.C. § 1820(a)(1) and *Primate Protection League*, the government can no longer remove a suit against the Department of Veterans Affairs under 28 U.S.C. § 1442(a)(1). This is not a problem in a case like this which arises under federal law, because such a suit is removable under section 1441, which was unaffected by *Primate Protection League*. But it cannot be assumed that all suits against the Veterans' Administration will arise under federal law.

[18] We come at last to the merits. After a bench trial that, pursuant to agreement of the parties, was limited to documentary evidence, the district court held that Shaw was indeed an obligor and that while the Veterans' Administration had violated the regulation by missing the fifteen-day deadline, Western could not complain, because the violation had not harmed it. In our court, Western does not challenge the holding that Shaw was an obligor. Nor does it contend that it was harmed by the fact that the Veterans' Administration missed the deadline. It could not argue that. It did not release Shaw until many months after it had received the Veterans' Administration's untimely notification to preserve personal liability. Its lawyer had the Administrator's notification in hand when he released Shaw; he just thought, erroneously as it turned out, that Shaw wasn't liable. There was no causal connection between the delay in notification and

the release of the obligor and consequent release of the Veterans' Administration's guaranty.

[19] Yet the regulation, read literally, conditions the release of the Veterans' Administration's guaranty on the Administration's making timely notification of its desire that personal liability be preserved, and timely is defined as fifteen days. The literal interpretation of the regulation would result, however, in a grossly excessive sanction for inevitable if regrettable bureaucratic ineptitude. Sanctions should be proportioned to the gravity of the misconduct. *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 232–33 (7th Cir. 1990); *Okaw Drainage District v. National Distillers & Chemical Corp.*, 882 F.2d 1241, 1248 (7th Cir.1989); *United States v. Carlone*, 666 F.2d 1112 (7th Cir.1981), and that should make us wary of imposing sanctions on misconduct that causes no harm. (We abstract from situations in which the sanction must be jacked up because violators frequently escape punishment or in which harmless attempts are punished in order to deter and disable malefactors who might not be deterred by the threat of punishment for the completed wrong.) This is not merely the command of retributive justice. It is also the counsel of expedience. Punishment more severe than the wrongdoing that is punished can induce excessive care. If the Veterans' Administration is to lose tens of thousands of dollars as a result of a trivial clerical error that harmed nobody, it may spend tens of thousands of dollars to prevent the recurrence of the error; thousands in costs to produce zero in social benefits, since the error was harmless. Excessive expenditures on care, like excessive expenditures on anything, are socially wasted. We should not be quick to infer an intention on the part of the Veterans' Administration, when it drafted the regulation in issue, to create an incentive for the Administration to be excessively careful, to the detriment of taxpayers and veterans alike. What Western with technical legal accuracy calls a condition, we functionally call a sanction: a costly consequence for an act which in this case hurt no one. The case would be

should not be construed to authorize the Executive to violate state criminal laws or to encroach upon constitutionally protected privacy interests. Before confronting the serious constitutional issues raised by the Court's reading of Title III,[34] we should insist upon an unambiguous statement by Congress that this sort of police conduct may be authorized by a court and that a specific showing of necessity, or at least probable cause, must precede such an authorization. Without a legislative mandate that is both explicit and specific, I would presume that this flagrant invasion of the citizen's privacy is prohibited. Cf. *United States v. New York Telephone Co.*, 434 U.S., at 178–179, 98 S.Ct., at 375 (STEVENS, J., dissenting in part); *United States v. Ramsey*, 431 U.S., at 632, 97 S.Ct., at 1983 (STEVENS, J., dissenting).[35]

I respectfully dissent.



441 U.S. 281, 60 L.Ed.2d 208

**CHRYSLER CORPORATION, Petitioner,**

v.

**Harold BROWN, Secretary of Defense, et al.**

No. 77–922.

Argued Nov. 8, 1978.

Decided April 18, 1979.

Government contractor sued to prevent disclosure of information supplied to the

Defense Logistics Agency concerning its employment of women and minorities. The United States District Court for the District of Delaware, 412 F.Supp. 171, granted relief in part. The United States Court of Appeals for the Third Circuit, 565 F.2d 1172, vacated that judgment and certiorari was granted. The Supreme Court, Mr. Justice Rehnquist, held that: (1) the Freedom of Information Act was exclusively a disclosure statute and afforded no private right of action to enjoin agency disclosure; (2) the type of disclosure threatened in this case was not "authorized by law" within the meaning of the Trade Secrets Act on the theory that Office of Federal Contract Compliance Programs regulations relied upon by DLA were the source of that authorization; (3) the Trade Secrets Act did not afford a private right of action to enjoin disclosure in violation of the statute; however, (4) review of the DLA's decision to disclose was available under the Administrative Procedure Act.

Judgment of Court of Appeals vacated and remanded.

Mr. Justice Marshall filed a concurring opinion.

Opinion on remand, 611 F.2d 439.

1. Records ⬅ 35, 59

Freedom of Information Act was exclusively disclosure statute and afforded no private right of action to enjoin agency disclosure; FOIA by itself protects interest in confidentiality of private entities submit-

---

34. Compare opinion of the Court, *ante*, at 1688–1689, 1692–1694, with opinion of Mr. Justice BRENNAN, *ante*, at 1694–1696.

35. In addition to Title III, the Government claims authority for the break-ins under the federal "no-knock" statute, 18 U.S.C. § 3109, and under Fed.Rule Crim.Proc. 41. Because I believe that Title III has pre-empted the field of electronic surveillance, it is conclusive for me that it nowhere authorizes the entries involved in this case as a means of executing an eavesdropping order. Even if Congress had never

enacted Title III, however, I would nonetheless conclude that these other asserted justifications for official breaking and entering are unavailing in this case. Both provisions refer to "warrants" issued by a magistrate with the awareness that their execution would probably require the police to find some otherwise illegal means of entering the premises. No such awareness was evidenced by the District Court when it authorized electronic surveillance in this case. See generally *United States v. Finazzo, supra*, at 845–848.

which *may* be exempted from disclosure.[16]

We therefore conclude that Congress did not limit an agency's discretion to disclose information when it enacted the FOIA. It necessarily follows that the Act does not afford Chrysler any right to enjoin agency disclosure.

## III

Chrysler contends, however, that even if its suit for injunctive relief cannot be based on the FOIA, such an action can be premised on the Trade Secrets Act, 18 U.S.C. § 1905. The Act provides:

"Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than

one year, or both; and shall be removed from office or employment."

There are necessarily two parts to Chrysler's argument: that § 1905 is applicable to the type of disclosure threatened in this case, and that it affords Chrysler a private right of action to obtain injunctive relief.

## A

The Court of Appeals held that § 1905 was not applicable to the agency disclosure at issue here because such disclosure was "authorized by law" within the meaning of the Act. The court found the source of that authorization to be the OFCCP regulations that DLA relied on in deciding to disclose information on the Hamtramck and Newark plants.[17] Chrysler contends here that these agency regulations are not "law" within the meaning of § 1905.

[2] It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the "force and effect of law."[18] This doctrine is so well established that agency regulations implementing federal statutes have been held to pre-empt state law under the Supremacy Clause.[18] It would therefore take a clear showing of contrary legislative intent before the phrase "authorized by law" in § 1905 could be held to have a narrower ambit than the traditional understanding.

The origins of the Trade Secrets Act can be traced to Rev.Stat. § 3167, an Act which barred unauthorized disclosure of specified business information by Government reve-

---

16. H.R.Rep. No. 1497, 89th Cong., 2d Sess., 2, 5, 7 (1966), U.S.Code Cong. & Admin.News 1966, pp. 2419, 2423–2424 (emphasis added). See also S.Rep. No. 813, 89th Cong., 1st Sess., 10 (1965). Congressman Moss, the House sponsor of the FOIA, described the exemptions on the House floor as indicating what documents "may be withheld." 112 Cong.Rec. 13641 (1966).

17. 41 CFR §§ 60.40–1 to 60.40–4 (1978).

18. E. g., *Batterton v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977);

*Foti v. INS*, 375 U.S. 217, 223, 84 S.Ct. 306, 310, 11 L.Ed.2d 281 (1963); *United States v. Mersky*, 361 U.S. 431, 437–438, 80 S.Ct. 459, 463, 4 L.Ed.2d 423 (1960); *Atchison, T. & S. F. R. Co. v. Scarlett*, 300 U.S. 471, 474, 57 S.Ct. 541, 543, 81 L.Ed. 1375 (1937).

19. *Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); *Public Utilities Comm'n of California v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958).